UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JACQLYN SMITH, | Case No.: 2:09-cv-2142-RLH-LRL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#9) |
| CLARK COUNTY, a political subdivision, and municipality including its department, CLARK COUNTY SCHOOL DISTRICT, | |
| Defendant. | |

Before the Court is Defendant Clark County School District's **Motion for Summary Judgment** (#9), filed March 2, 2010. The Court has also considered Plaintiff Jacqlyn Smith's Opposition (#16), filed April 13, 2010; the School District's Reply (#17), filed April 21, 2010; and the School District's Supplement to its Motion (#21), filed June 11, 2010. The Court also held a hearing on this Motion on June 17, 2010 (## 22–23).

**BACKGROUND**

Clark County School District hired Smith as a first grade teacher on August 13, 1992. In 2003 Smith took medical leave due to neck and back problems that limited her ability to stand for prolonged periods, stoop, bend, or lift heavier weights. While on leave, Smith determined

1

she was gradually losing the physical stamina needed to work effectively in a regular classroom. She underwent additional training and obtained a certification as a literary specialist on April 4, 2004, with the goal of continuing to work for the School District, but in a less physically demanding position. On September 10, 2007, Smith transferred to Lorna J. Kesterson Elementary School and worked as a literacy specialist. On March 24, 2008, the principal of Kesterson Elementary, Michele Wooldridge, told Smith she was being reassigned as a kindergarten teacher for the 2008-09 school year. On March 31, 2008, Smith again went on medical leave because of a flare up of her back and neck condition. On April 17, 2008, Smith wrote a letter to Wooldridge stating that due to her physical impairments she could not perform the duties of a kindergarten teacher but could fulfill her position as a literacy specialist without any accommodation. Smith requested to not be reassigned as a kindergarten teacher and, pursuant to the Americans with Disabilities Act ("ADA"), remain in her position as a literacy specialist.

On May 1, 2008, Smith's physician, Dr. Vyjayanti Ramaswamy, wrote a letter confirming Smith's medical conditions and physical limitations and requesting that Smith "be kept in her present position as a literacy specialist where minimal physical exertion is required." (Dkt. #1, Compl. ¶ 16.) In a writing dated April 21, 2008, Smith reiterated her request to remain as the literacy specialist and stated she "was the most qualified and trained professional on staff at [Kesterson Elementary] for the literacy specialist position and that there were many teachers on staff without disabilities who were licensed to teach kindergarten." (Compl. ¶ 17.) On April 25, 2008, and despite Smith's requests, Wooldridge posted the literary specialist position at Kesterson Elementary and solicited teachers to interview. Smith applied but was not interviewed. Wooldridge selected Virginia Dievendorf for the position despite the fact that Dievendorf was not recommended for the position by the interviewing committee and she did not receive her endorsement as a literacy specialist until July 8, 2008—two months after she was hired for the position. Smith then requested placement in other non-classroom positions that were open and for

which she was qualified. Smith was told she had to apply for, interview, and compete for the positions with other applicants. Smith applied but was not called for an interview.

Being faced with her Family Medical Leave ending on September 5, 2008 and her sick time ending shortly after that and not having a position that she was able to perform with her disabilities for the 2008-09 school year which had already begun, Smith allegedly felt compelled to apply for disability retirement on or about August 27, 2008, thus ending her employment at the School District. She alleges the School District constructively terminated her by not giving her a position she was able to perform for the 2008-09 school year. She also spoke with an attorney representing Nevada teachers' unions in August 2008 regarding her request for reasonable accommodation under the ADA, and the attorney wrote her a letter that discussed the possibility that Smith might file a lawsuit against the School District pursuant to the ADA. (*See* Dkt. #9, Mot. Ex. 4, letter from Francis Flaherty.) On May 27, 2008, Smith filed an administrative charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Nevada Equal Rights Commission, alleging a violation of the ADA. The EEOC issued Smith a notice of right to sue on August 12, 2009.

On August 14, 2009, Smith and her husband, acting without counsel, filed a Chapter 7 bankruptcy petition. On August 27, 2009, Smith filed required schedules and forms in bankruptcy court, but did not disclose her potential ADA lawsuit against the School District. A meeting of creditors pursuant to 11 U.S.C. § 341(a) was scheduled for September 18, 2009. David A. Rosenberg was appointed trustee in the case. Prior to the meeting of creditors and in accordance with his usual practice when handling cases brought by pro se debtors, Rosenberg sent the Smiths a letter detailing additional information the Smiths needed to provide to him. The Smiths sent Rosenberg the information he requested. One of documents included with that information was a bankruptcy questionnaire, which the Smiths completed, and which including information regarding Smith's potential lawsuit. On the questionnaire, the Smith circled "yes" as her answer to Question 11, which asked, "*Have you filed or do you have a reason to file any lawsuit against any*

*one for any reason?*". In addition, on line 10 of Part IV of the questionnaire, which asks debtors to "list all documents being submitted with this Questionnaire to the Trustee," one of the Smiths wrote, "JACQLYN—RIGHT TO SUE[,]" and attached a copy of the right-to-sue letter sent to Smith. (Dkt. #16, Opp'n Ex. A, David A. Rosenberg Aff. ¶¶ 9–10 & attachs.) Rosenberg avers that as a result of reading the right-to-sue letter and the questionnaire, he knew of Smith's potential lawsuit. At the meeting of creditors held on September 18, over which Rosenberg presided, he allegedly inquired into Smith's potential lawsuit. According to Rosenberg, the Smiths explained the lawsuit fully. Rosenberg then allegedly evaluated the potential lawsuit's value to the bankruptcy estate and, based on his business judgment, determined it had none. Rosenberg also felt it would be a "waste" of the Smiths' time and his to request that the Smiths amend their bankruptcy petition to list the lawsuit on their bankruptcy schedules. (*Id.* ¶ 16.) That day, Rosenberg filed on the docket an entry declaring his conclusion that "there is no property available for distribution from the estate over and above that exempted by law." (*Id.* ¶ 17.) Rosenberg then closed the case, abandoning any interest in the lawsuit by the bankruptcy estate. According to Rosenberg, the bankruptcy code provides that the trustee's right to the pursue the lawsuit reverted back to the Smiths. Smith also avers that in filing her bankruptcy schedules, she had no intent not to disclose the potential lawsuit, and did not understand that it and her administrative proceedings before the EEOC and NERC should be disclosed on her petition and schedules. (Dkt. #16, Opp'n Ex. B, Jacqlyn Smith Aff. ¶¶ 6–7.)

   On November 19, 2009, Smith commenced this action for disability discrimination and failure to accommodate in violation of the ADA, and for constructive termination due to disability. On February 23, 2010, the Smiths received a discharge of their debts.

   The School District now moves for summary judgment based on judicial estoppel, arguing that because Smith did not disclose her then-potential lawsuit to the bankruptcy court in the schedules she initially filed, she is now estopped from bringing her claims in this suit. In her Opposition, Smith argues that although she and her husband, acting as *pro se* debtors, did not

disclose the potential lawsuit in their initial filings, they fully disclosed the suit at later a later stage in the bankruptcy proceedings, and thus judicial estoppel does not apply. Smith also requests that the Court issue an order to show cause as to why the School District's counsel should not be sanctioned for refusing to withdraw the motion for summary judgment despite evidence that the Smiths eventually did disclose the potential lawsuit to the bankruptcy trustee. For the reasons given below, the Court denies the School District's Motion and likewise denies Smith's request related to sanctions.

**DISCUSSION**

**I.     Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

**II.     The School District's Motion for Summary Judgment Invoking Judicial Estoppel**

The School District moves for summary judgment based upon judicial estoppel. The School District argues that because Smith did not disclose her then-potential lawsuit to the bankruptcy court in her initial filings, she is now estopped from bringing her claims in the present suit.

> Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts.

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citations, quotation marks, and alteration omitted). Among other criteria, courts may consider the following three factors in determining whether to apply the doctrine of judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus no threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (quoted in *Hamilton*, 270 F.3d at 782–83).

The Ninth Circuit also stated that "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise

6

mentioned in the debtor's schedules or disclosure statements." *Hamilton*, 270 F.3d 783 (collecting cases). "[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely." *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999).

Smith failed to disclose her potential lawsuit against Clark County School District in the bankruptcy schedules she filed on August 27, 2009. The School District asserts Smith's later position, her ADA claim, is clearly inconsistent with the earlier position she took when filling out the bankruptcy schedules. Smith asserts she did not list the potential lawsuit because it had not yet been filed and because she did not know her filing with the EEOC and NERC was considered an administrative proceeding. The bankruptcy trustee, Rosenberg, avers that the Smiths disclosed the potential lawsuit on the bankruptcy questionnaire they submitted and discussed its details with him at the meeting of creditors. Thus, Smith alleges, her position before the bankruptcy court was not clearly inconsistent with her position in this case, and judicial estoppel does not apply. In its reply, the School District chiefly argues that under *Hamilton* and other cases, judicial estoppel applies "*even if* the plaintiff had notified the trustee of the potential lawsuit but did not disclose the action in the required schedules filed with the bankruptcy court." (Dkt. #17, Reply 2–3.)

The Court disagrees with the School District and concludes that, under the particular facts of this case, Smith is not judicially estopped from bringing her claims. First, under the first of the criteria set forth in *New Hampshire v. Maine*, the Smiths' position before the bankruptcy court was not clearly inconsistent with their position in this case: the Smiths allege, and the School District does not dispute, that they fully disclosed the details of their then-potential lawsuit in their bankruptcy questionnaire and in discussions with the trustee at the meeting of creditors. It is true that the Ninth Circuit in *Hamilton* seems to insist that the debtor-plaintiff must list potential lawsuits on their bankruptcy *schedules* under 11 U.S.C. § 521(1), "because of the express duties of disclosure imposed" by that section, "and because both the [bankruptcy] court and [the plaintiff's] creditors base their actions on the disclosure statements and schedules." 270

F.3d at 784. But in the unique circumstances of this case, the Smiths, who were pro se debtors, disclosed the details of their potential suit to the trustee, and the *trustee* opted to abandon the estate's interest in the lawsuit "rather than waste the Debtors' time ... asking them to amend their petition to list the lawsuit on Schedule B[.]" (Dkt. #16, Opp'n Ex. A, David A. Rosenberg Aff. ¶ 16.) These unique circumstances bring into question the School District's assertion that Smith's present claims are clearly inconsistent with her representations in the bankruptcy proceeding.

For the same reasons, it does not appear that the Smiths "succeeded in persuading [the bankruptcy] court to accept [their] earlier position, so that judicial acceptance of an inconsistent position in [this] proceeding would create the perception that either the [bankruptcy] or [this] court was misled." *New Hampshire*, 532 U.S. at 750. Likewise, the Court cannot conclude the Smiths would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* It appears that to the extent the bankruptcy court and Smiths' pre-bankruptcy creditors were misled by the Smith's failure to list the potential lawsuit on their schedules, that failure is largely attributable to the bankruptcy trustee, Rosenberg, and not to the Smiths. In any event, in the Court's view it would be inequitable to apply judicial estoppel here. However, the Court also concludes the School District's arguments were not made in bad faith and have some degree of support in the case law, and therefore declines Smith's request to consider sanctions against the School District.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Clark County School District's Motion for Summary Judgment (#9) is DENIED.

Dated: August 13, 2010.

_____
**ROGER L. HUNT**
**Chief United States District Judge**