UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JACQLYN SMITH, | Case No.: 2:09-cv-2142-RLH-LRL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#29) |
| CLARK COUNTY, a political subdivision, and municipality including its department, CLARK COUNTY SCHOOL DISTRICT, | |
| Defendant. | |

   Before the Court is Defendant Clark County School District's ("CCSD") **Motion for Summary Judgment** (#29, filed Oct. 29, 2010). The Court has also considered Plaintiff Jacqlyn Smith's Opposition (#32, filed Nov. 29, 2010), and CCSD's Reply (#33, filed Dec. 10, 2010).

**BACKGROUND**

   This dispute arises from Smith's allegation that CCSD violated the Americans with Disabilities Act of 1990 ("the ADA") in its handling of her disability. CCSD hired Smith as an elementary teacher in 1992. In 2001, Smith took a brief medical leave due to neck and back problems that limited her ability to stand for prolonged periods, stoop, bend, or lift heavier weights. In April 2004, she underwent additional training and obtained a literacy specialist

certification.[1] Between 2004 and 2007, Smith worked as a literacy specialist. Smith transferred to Kesterson Elementary School ("Kesterson") for the 2007-2008 school year. On March 24, 2008, the principal of Kesterson, Michele Wooldridge, told Smith she was being reassigned as a kindergarten teacher for the 2008-09 school year. Smith informed Wooldridge that her back condition would limit her mobility in the classroom and requested that Wooldridge keep her in the literacy specialist position.

On March 31, 2008, Smith took another medical leave after she reaggravated her back and neck condition by overexerting herself during her literacy specialist duties. In April, Smith's physician, Dr. Vyjayanti Ramaswamy, noted on Smith's Family Medical Leave Request form that Smith's injuries left her "incapacitated" and unable to work through at least May 5. (Dkt. #32, Opp'n Ex. D.) On April 17, Smith wrote a letter to Wooldridge again requesting that she remain in the literacy specialist position as a reasonable accommodation in accordance with the ADA. (*Id.* Ex. E.)

On April 25, 2008, Wooldridge posted the literacy specialist position at Kesterson and solicited teachers to interview, despite Smith's repeated requests to stay in the position. On April 28, Smith sent an e-mail to Thomas Rodriguez, the ADA Coordinator for CCSD, asking him to approve the accommodation of remaining in the literacy specialist position. Rodriguez declined Smith's request and offered several alternative accommodations for the teaching position, including providing a full-time classroom aide, specialized furniture, and moving Smith to a higher grade level. Smith repeatedly refused any accommodations that would place her in a classroom teaching position. Smith then applied to the literacy position at Kesterson but she was not selected for an interview. Instead, Wooldridge hired Virginia Dievendorf, despite the fact that the interviewing committee did not recommend her for the position and Dievendorf did not receive her endorsement as a literacy specialist until two months after she was hired.

---

[1] Literacy specialists help train and assist elementary school teachers in literacy instruction, testing, and student assessment.

2

On May 1, 2008, Dr. Ramaswamy wrote two nearly identical notes confirming Smith's medical conditions and physical limitations. In both letters, Dr. Ramaswamy's stated that the "regular classroom [was] not an option [for Smith,]" "[e]ven with accommodations." (Dkt.# 32, Opp'n Ex. F.) One letter explicitly requested that Smith "be kept in her present position as a literacy specialist." (*Id.*) The other letter replaced this language with a request that Smith's medical leave be extended until June 2008. (Dkt. #33, Reply Ex. 3, Ramaswamy Dep. 69:19–21.) On August 25, 2008, Dr. Sameera Sbiah extended Smith's medical leave indefinitely until released by a doctor.

On May 27, 2008, Smith filed an administrative charge of disability discrimination with the Nevada Equal Rights Commission ("NERC"), alleging a violation of the ADA. NERC investigated the charge and concluded Smith did not establish an ADA violation. Upon Smith's request, the Equal Employment Opportunity Commission ("EEOC") reviewed NERC's determination and concurred with NERC's finding of no violation. The EEOC issued Smith a right to sue notice on August 12, 2009.

In June 2008, Smith applied for and began receiving disability insurance benefits. She attached statements to her insurance application that indicated an inability to work; however, the forms did not conclusively state whether the disability was permanent or temporary. Additionally, Smith applied for Nevada Public Employees' Retirement Systems ("PERS") disability retirement in August 2008, effectively ending her employment at CCSD. Smith subsequently received notice that PERS approved her application for "total and permanent disability."

On November 9, 2009, Smith filed suit in this Court alleging discrimination in violation of the ADA for CCSD's failure to provide a reasonable accommodation for her disability. CCSD has now filed a motion for summary judgment on Smith's claims. For the reasons stated below, the Court denies CCSD's motion for summary judgment.

///

# DISCUSSION

## I. CCSD's Motion for Summary Judgment

### A. Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the

1  moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to
2  "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
3  The nonmoving party "may not rely on denials in the pleadings but must produce specific
4  evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
5  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
6  show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285
7  F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of
8  evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

9  **B.     ADA Claim**

10             The ADA protects a qualified individual with a disability against employment
11 discrimination by covered entities in regard to the individual's disability. 42 U.S.C. § 12112(a).
12 The ADA defines discrimination as the failure to "make reasonable accommodations to the known
13 physical or mental limitations of an otherwise qualified individual with a disability who is an
14 applicant or employee, unless such covered entity can demonstrate that the accommodation would
15 impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). To
16 state a *prima facie* case under the ADA, a plaintiff must demonstrate: (1) he is disabled within the
17 meaning of the ADA; (2) he is a qualified individual; and (3) he suffered an adverse employment
18 action because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir.
19 1999).

20             For the purposes of this motion, the parties do not dispute that Smith has a
21 disability within the meaning of the ADA, nor do they dispute Smith's inability to perform the
22 essential functions of a classroom teacher *without* a reasonable accommodation. Instead, CCSD
23 seeks to establish that Smith is permanently disabled, which would classify her as a non-qualified
24 individual and preclude her from ADA protection, and that CCSD's offered accommodations were
25 reasonable in accordance with the ADA. The Court will address each assertion in turn.
26 ///

5

**1.     Qualified Individual**

CCSD asserts that it is entitled to summary judgment because Smith's representations as permanent disabled on her disability insurance forms preclude a finding that she is a qualified individual under the ADA.  Smith explains that her disability only prevents her from performing the essential functions of a classroom teacher, not a literacy specialist.  Therefore, she argues that she is a qualified individual under the ADA.

The ADA defines a "qualified individual" with a disability as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  "The individual must also satisfy the requisite skill, experience, education and other job-related requirements of the position." *Rohr v. Salt River Project*, 555 F.3d 850, 862 (9th Cir. 2009) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007)).  The employee bears the burden of proving he is qualified. *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006).  Thus, a plaintiff must establish that he can perform the essential functions of the job he desires, with or without reasonable accommodation. *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1090 (9th Cir. 2007) (citing 42 U.S.C. § 12111(8)).  The ADA does not require employers to exempt an employee from performing essential functions or to reallocate essential functions to other employees. *Dark*, 451 F.3d at 1089 (citing 29 C.F.R. § 1630).

The Court finds that triable issues of fact remain because CCSD has proffered insufficient evidence to conclusively show that Smith has a *permanent* disability precluding her from qualified individual status.  Although there is some indication that Smith's disability benefits are for a permanent condition, her forms are largely based on her doctors' opinions concerning Smith's *temporary* disability.  Smith's April 2008 FMLA certificate indicates that she was "presently incapacitated" from work for "at least 6 weeks." (Dkt. #29, Mot. Ex. 11.)  Dr. Ramaswamy also testified that the FMLA certificate was only intended to give Smith temporary medical leave from work through June 2008 while her condition was diagnosed.  (Dkt. #33, Reply

6

Ex. 3, Ramaswamy Dep. 61:22–25; 68:22–69:2). Additionally, the August 2008 FMLA certificate completed by Dr. Sbaih does not present conclusive evidence establishing that Smith was permanently disabled. Dr. Sbaih's notes merely state that Smith is indefinitely incapacitated and should not work until released by a doctor. Thus, neither Dr. Ramaswamy or Dr. Sbaih diagnosed Smith with a permanent disability that would prevent her from being a qualified individual under the ADA. Accordingly, Smith has set forth specific facts showing a genuine issue of material fact for trial.

### 2.   Reasonable Accommodations

Next, the analysis turns to whether the accommodations provided by CCSD were reasonable such that Smith could have performed the essential functions of a classroom teacher. CCSD argues that Smith's refusal of its offered accommodations effectively exempts Smith from qualified individual status. In response, Smith asserts that CCSD failed to provide the only reasonable accommodation for her disability: transfer to a non-classroom position.

The ADA prohibits employers from taking adverse action against qualified employees by failing to make "reasonable accommodations . . . *unless* such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A)(emphasis added)). The plaintiff bears the initial burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of an available job. *Dark*, 451 F.3d at 1088.

To avoid summary judgment, a plaintiff "need only show that an accommodation *seems reasonable on its face*, i.e., ordinarily or in the run of cases." *Id.* (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002)) (emphasis in original). An "employer is not obligated to provide an employee the accommodation he requests or prefers," the employer need only provide some reasonable and effective accommodation. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citing *E.E.O.C. v. Yellow Freight Sys. Inc.*, 253 F.3d 943, 951 (7th Cir. 2001) (en banc)). However, once an employee sets forth a facially reasonable accommodation, the

7

ADA shifts the burden on the employer to show that a proposed accommodation will cause undue hardship. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1113 (9th Cir. 2000) (en banc), *vacated on other grounds, U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

The Court finds that triable issues of fact exists as to whether CCSD's or Smith's offered accommodations were reasonable such that they would have allowed Smith to perform the essential functions of a classroom teacher with her disability.  CCSD offered to provide her with a full-time classroom aide, specialized furniture, and reassignment to a higher grade level in an effort to reduce the frequency of physical tasks, such as picking up toys, normally associated with younger students.  However, the submitted evidence does not conclusively establish that Smith could have performed the essential functions of a classroom teacher with these accommodations. Smith's physicians' notes indicate a severe limitation in physical activities normally associated with a kindergarten classroom teacher, including bending, standing, and sitting for long periods. Dr. Ramaswamy's note stated that working in a classroom would cause Smith "physical and mental hardship," and that "[e]ven with accommodations[,] the regular classroom is not an option."  (Dkt. #32 , Opp'n Ex. F).  Dr. Sbaih extended Smith's medical leave indefinitely, noting that Smith should not perform work "of any kind until released by [a] doctor."  (Dkt. #29, Mot. Ex. 11.)  Therefore, a genuine issue of material fact exists as to the reasonableness of the proposed accommodations under the ADA's standards.

Furthermore, CCSD has not met its burden to show that Smith's proposed accommodation—staying in the literacy specialist position—would have posed an undue burden. Smith explained that she needed to remain in the literacy specialist position because it was less physically demanding than a classroom position and gave her more freedom to sit.  Dr. Ramaswamy's letters seem to endorse Smith's conclusion that the literary specialist position was a reasonable accommodation and further denounced a classroom setting for her condition.  Notably, CCSD does not dispute that Smith was qualified and excelled at the literacy specialist position, but it nonetheless decided to go through the extra time and expense of hiring a new literacy specialist

who had not yet received her certification. Because Smith's offered accommodation seems facially reasonable and CCSD has not met its burden to show that her proposed accommodation would have posed an undue burden, Smith's ADA claims survive summary judgment. Accordingly, the Court denies CCSD's motion for summary judgment.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that CCSD's Motion for Summary Judgment (#29) is DENIED.

Dated: April 25, 2011.

_____
ROGER L. HUNT
Chief United States District Judge